# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHERYL THURSTON, an individual, and DOMINICK MARTIN, an individual,<br><br>                 Plaintiffs,<br><br>  -against-<br><br>CANADA GOOSE US, INC, a Delaware corporation; and DOES 1-10, inclusive,<br><br>             Defendants | Case:  8:19-cv-01283-GW-FFM<br><br>**CONSENT DECREE** |

1.    This Consent Decree is entered into as of the Effective Date, as defined below in Paragraph 12, by and between the following parties: Plaintiffs, Cheryl Thurston and Dominick Martin ("Plaintiffs") and Defendant, Canada Goose US, Inc. ("Defendant") (Plaintiffs and Defendant shall hereinafter be collectively referred to as the "Parties" and individually as a "Party") for the purposes and on the terms specified herein.

1

## RECITALS

2.     Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12181 - 12189 ("ADA") and its implementing regulation, 28 C.F.R. pt. 36, prohibit discrimination on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation by any private entity that owns, leases (or leases to), or operates any place of public accommodation. 42 U.S.C. § 12182(a); 28 C.F.R. § 36.201(a).

3.     Section 51(f) of the California Civil Code provides that a violation of the right of any individual under the ADA shall also constitute a violation of the Unruh Civil Rights Act.

4.     On June 25, 2019, Plaintiffs filed a lawsuit against Defendant. Plaintiffs alleged that Defendant's website directed at consumers which can be accessed by U.S. based consumers through the use of the domain name http://www.canadagoose.com (the "Website" as further defined in Paragraph 15), contains barriers that prevent full and equal use by blind persons, in violation of Title III of the ADA, 42 U.S.C. §§ 12181-12189, and the Unruh Civil Rights Act, California Civil Code § 51 et seq.

5.     Defendant expressly denies that the Website violates Title III of the ADA, the Unruh Civil Rights Act, or any other applicable law, rule, regulation or statute. By entry into this Consent Decree, Defendant does not acknowledge or admit any violation of any law or any wrongdoing of any kind in any respect.

6.     This Consent Decree resolves, settles, and compromises all issues between the Parties based on the allegations set forth in Plaintiffs' Complaint and those claims or issues which arise from such allegations

2

CONSENT DECREE

## JURISDICTION

7.     Plaintiffs allege that Defendant is a private entity that owns and/or operates, or contracts to have operated, the Website which is available through the internet to personal computers, laptops, mobile devices, tablets, and other similar technology. Plaintiffs contend that Defendant's Website is a sales and service establishment whose operations affect commerce and a public accommodation subject to Title III of the ADA. 42 U.S.C. §12181(7); 12182(a); 28 C.F.R. §§ 36.104, 36.201(a). Defendant denies that its Website is a public accommodation or a place of public accommodation or is otherwise subject to Title III of the ADA.

8.     Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under the Unruh Civil Rights Act, which act expressly incorporates the ADA.

9.     This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. § 12188. The Parties agree that venue is appropriate.

## AGREED RESOLUTION

10.     Plaintiffs and Defendant agree that it is in the Parties' best interest to resolve this lawsuit on mutually agreeable terms without further litigation. Accordingly, the Parties agree to the entry of this Consent Decree without trial or further adjudication of any issues of fact or law raised in the Complaint.

11.     Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which act expressly incorporates the Americans with Disabilities Act.

In resolution of this action, the Parties hereby **AGREE** and the Court expressly **APPROVES, ENTERS, AND ORDERS** the following:

3

CONSENT DECREE

**DEFINITIONS**

12.   "Effective Date" means the date on which this Consent Decree is entered on the Court's Docket Sheet following approval by the Court.

13.   "Person(s) with a visual impairment" means any person who has a visual impairment who meets the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20 x 200.

14.   "Reasonable Efforts" means, with respect to a given goal or obligation, the commercially reasonable efforts that a reasonable person in Defendant's position would use to achieve that goal or obligation and with respect to Defendant's Website (as defined below) shall mean commercially reasonable efforts to improve the existing level of accessibility of the Website to Persons with a visual impairment by using the Worldwide Web Consortium's Web Content Accessibility Guidelines WCAG 2.0 Level AA Success Criteria r Released Parties; an"WCAG 2.0 AA") as a guideline to make such improvements. Any disagreement by the Parties as to whether Defendant has used Reasonable Efforts as provided for under this Consent Decree shall be subject to the dispute resolution procedures set forth in paragraphs 19 and 21 through 32 of this Consent Decree. Reasonable Efforts shall be interpreted so as not to require Defendant to undertake efforts whose cost, difficulty or impact on Defendant or its affiliates' Website-related operations would constitute an undue burden, as defined in Title III of the ADA but as applied to Defendant's consumer focused merchandise-selling Website-related operations, or would otherwise require efforts that are not commercially reasonable, technically feasible or constitute a fundamental alteration of the Website's features or primary use.

15.   The Website, as initially defined in Paragraph 4 above, means the U.S. portion of the eCommerce webpages owned and operated by or on behalf of Defendant that allow consumers to obtain information about Defendant's products and purchase products on-line for delivery to their homes or places of

4

business in some geographic areas. "Website" does not include any mobile applications or Third-Party Content (as defined below), nor does it apply to any portions of the Website directed at business users or Defendant's business partners, or those designated for internal use by Defendant or its affiliates or to websites not owned, operated or controlled by Defendant but that are linked from or to Website or its mobile applications.

16.    Third-Party Content means web content that is generated by a third party and not owned, coded, managed, operated by or on behalf of Defendant, or hosted on the Website.

**TERM**

17.    The term of this Consent Decree shall commence as of the Effective Date and remain in effect for twelve (12) months from the Effective Date.

**COMPLIANCE WITH TITLE III OF THE ADA**
**AND THE UNRUH CIVIL RIGHTS ACT**

18.    **Web Accessibility Conformance Timeline:** Defendant shall use Reasonable Efforts to improve the existing level of accessibility of the Website to Persons with a visual impairment as set forth in paragraph 15 hereof by no later than twelve months from the Effective Date (the "Compliance Date"; the period from the Effective Date to the Compliance Date shall be the "Modification Period").

19.    **Plaintiffs' Right to Conduct Compliance Audit:** Plaintiffs (through Plaintiffs' counsel) shall have the right to perform, at their own cost, their own accessibility testing of the Website. Plaintiffs (through Plaintiffs' counsel) shall have thirty (30) days from the end of the Modification Period to identify to Defendant in writing any ways in which they reasonably believe and contend that Defendant has not substantially complied with its obligations under paragraphs 14 and 18. Such written notice shall specify in detail the alleged breach and the reason why Plaintiffs believes that Defendant has not

5

1  substantially complied with its obligations under paragraphs 14 and 18. If
2  Plaintiffs do not raise any issues in writing within the applicable 30-day time
3  frame, Plaintiffs will be deemed to have waived any and all remaining rights to
4  challenge the accessibility of the Website. If Plaintiffs raise any purported
5  failure(s) of Defendant to substantially comply with its obligations under
6  paragraphs 14 and 18 in writing within the permitted 30-day window provided
7  above, the Parties (through their respective counsel) shall meet and confer
8  within sixty (60) days thereafter in good faith to determine a resolution of the
9  issue(s); provided, however, that Plaintiffs acknowledge and waive any and all
10 rights that she may otherwise have to recover from Defendant any damages,
11 attorneys' or experts' fees, costs, expenses, or disbursements of any kind related
12 to any such activity.

13                    **SPECIFIC RELIEF TO PLAINTIFF**

14       20.    **Specific Relief:** Plaintiffs and Defendant have agreed to settle all
15 matters relating to costs, damages, attorneys' fees, experts' fees, and other financial
16 matters through a separate confidential settlement agreement, the terms of which
17 regarding changes to Defendant's Website are consistent with this Consent
18 Decree (the "Settlement Agreement"). The Settlement Agreement shall be
19 provided to the Court *in camera* for inspection and review if the Court so
20 requires in order to extend its enforcement jurisdiction over the terms of the
21 Settlement Agreement.

22             **PROCEDURES IN THE EVENT OF DISPUTES**

23       21.    The procedures set forth in Paragraphs 19 and 21 through 32 must be
24 exhausted in the event that Plaintiffs allege that Defendant has failed to meet its
25 obligations pursuant to this Consent Decree. There will be no breach of this
26 Consent Decree by Defendant in connection with such allegations until all such
27 procedures have been exhausted.

28

CONSENT DECREE

22.  Plaintiffs will notify Defendant in writing if it believes that the Website is in any way not compliant with this Consent Decree in accordance with the timeline and procedures set forth in Paragraph 19.

23.  If any issue remains unresolved following the Parties' compliance with procedures set forth above, within ninety (90) days thereafter, the Parties will each have an additional sixty (60) days to select an expert and the two selected experts will mutually select an independent expert (the "Accessibility Consultant") with experience in accessible website design who will evaluate the particular item(s) raised based on whether those item(s) of the Website are in substantial conformance with Defendant's obligations under paragraphs 14 and 18.

24.  The Parties agree that no breach of this Consent Decree shall be deemed to have occurred unless (a) the Accessibility Consultant determines that the particular item(s) of the Website is not in substantial conformance with Defendant's obligations under paragraphs 14 and 18 and (b) Defendant fails to remedy the issue within a reasonable period of time of not less than ninety (90) days of receiving the Accessibility Consultant's written opinion. If the Accessibility Consultant believes that a reasonable time to remedy the items found to be not usable is longer than 60 days, then the Parties may agree on a longer time period without leave of Court so long as the extension is documented in writing and executed by the Parties to this Agreement or their respective counsel.

25.  Should the Parties thereafter have a dispute regarding an issue raised in a notice given under Paragraph 19 after the procedures in Paragraphs 23 through 24 have been exhausted, the dispute shall be handled pursuant to the procedures set forth in Paragraphs 26 through 31 below.

26.  If a Party believes that any other Party has not complied with any provision of the Consent Decree, that Party shall provide the other Party with Notice of Non-Compliance containing the following information: (i) the alleged act of non-compliance; (ii) a reference to the specific provision(s) of

CONSENT DECREE

the Consent Decree that are involved; (iii) a statement of the remedial action sought by the initiating party; and (iv) a brief statement of the specific facts, circumstances and legal argument supporting the position of the initiating party.

27. Within forty-five (45) days of receipt of a Notice pursuant to Paragraph 26, the non-initiating Party shall respond to the initiating Party in writing.

28. Within fourteen (14) days after the response described in Paragraph 27, the Parties shall informally meet and confer and attempt to resolve the issues raised in the Notice.

29. If the matters raised in a Notice provided pursuant to the above are not resolved within forty-five (45) days of the initial meet and confer required by Paragraph 28, either Party may submit the unresolved matters to nonbinding mediation before a mediator chosen by the Parties. If the designated mediator is unable to serve as mediator or the Parties cannot agree to a mediator, then a mediator affiliated with Judicial Arbitration & Mediation Services ("JAMS") shall be appointed. All costs of any mediation shall be borne equally by the Parties. Each Party shall bear their own attorney fees and expert fees in connection with any mediation.

30. If the dispute is not resolved in mediation, the Parties then will submit the matter for binding arbitration before a single arbitrator affiliated with JAMS. The arbitration hearing shall be conducted at a mutually convenient location and pursuant to JAMS Streamlined Arbitration Rules and Procedures. Those Rules will be modified as necessary to ensure that the hearing is held as soon as practicable after the submission to arbitration, and that a written decision on the matter is rendered within sixty (60) days of the last hearing date. The award of the arbitrator will be enforceable in this Court. All costs of any arbitration shall be borne equally by the Parties. The successful

CONSENT DECREE

Party may recover their attorney fees and expert fees in connection with any arbitration, in an amount as determined by the arbitrator.

31.    Any of the time periods set forth in Paragraphs 24 through 30 may be extended by mutual agreement of the Parties.

32.    Any notice or communication required or permitted to be given to the Parties hereunder shall be given in writing by e-mail and by overnight express mail or United States first class mail, addressed as follows:

To Plaintiffs:

Scott J. Ferrell, Esq.
PACIFIC TRIAL ATTORNEYS
4100 Newport Place Drive, Suite 800
Newport Beach, CA 92660
E-mail: sferrell@pacifictrialattorneys.com
□□□   □□(949) 706-6464
Fax:   (949) 706-6469

To Defendant:

Canada Goose U.S., Inc.
c/o Karim Momin
Morrison Cohen LLP
909 Third Ave.
NY, NY 10022
Email: kmomin@morrisoncohen.com
Phone: 212-735-8660
Fax: 917-522-3160

With a copy to:

Morrison Cohen LLP
Attn: Fred H. Perkins, Esq.
909 Third Avenue, 27th floor
New York, NY 10022
Email: fhperkins@morrisoncohen.com
Phone: 212-735-8647
Fax: 917-522-3147

9

CONSENT DECREE

## MODIFICATION

33.     No modification of this Consent Decree shall be effective unless in writing and signed by authorized representatives of all Parties.

## ENFORCEMENT AND OTHER PROVISIONS

34.     The interpretation and enforcement of this Consent Decree shall be governed by the laws of the State of California. This Court shall retain jurisdiction over this matter for purposes of enforcement of this Consent Decree in accordance with its terms.

35.     Except for the Settlement Agreement, this Consent Decree contains the entire agreement of Plaintiffs and Defendant concerning the subject matter described and addressed herein, and no other statement, promise, or agreement, either written or oral, made by any party or agent of any party, that is not contained in this Consent Decree shall be enforceable.

36.     If any provision of this Consent Decree is determined to be invalid, unenforceable, or otherwise contrary to applicable law, such provision shall be deemed restated to reflect as nearly as possible and to the fullest extent permitted by applicable law its original intent and shall not, in any event, affect any other provisions, all of which shall remain valid and enforceable to the fullest extent permitted by applicable law.

## PERSONS BOUND

37.     This Consent Decree shall be binding on the Parties and their successors and assigns. In the event that Defendant seeks to transfer or assign all or part of its interest in any service covered by this Consent Decree, and the successor or assign intends on carrying on the same or similar use of the Website or online services, then the successor or assignee shall be solely responsible for

the obligations remaining under this Consent Decree for the duration of the remaining term of the Consent Decree.

38.     The Parties to this Consent Decree expressly intend and agree that this Consent Decree shall inure to the benefit of any persons with a visual impairment who seek to access the Website, which visually-impaired persons shall constitute third-party beneficiaries to this Consent Decree. Such third-party beneficiaries shall be entitled to enforce the provisions of this Consent Decree against Defendant and enforce the dispute resolution provisions herein.

39.     Plaintiffs and Defendant agree that, as of the date of entry of this Consent Decree, litigation is not "reasonably foreseeable" concerning the matters described herein and alleged in the Complaint. To the extent that any of the Parties previously implemented a litigation hold to preserve documents, electronically stored information, or things related to the matters described in Paragraph 3, the Party is no longer required to maintain such a litigation hold. Nothing in this paragraph relieves any Party of any other obligations imposed by this Consent Decree.

40.     The signatories represent that they have the authority to bind the respective Parties to this Consent Decree.

///

CONSENT DECREE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CONSENT DECREE HAS BEEN READ

41.    This Consent Decree has been carefully read by each of the Parties, and its contents are known and understood by each of the Parties. This Consent Decree is signed freely by each Party executing it. The Parties each had an opportunity to consult with their counsel prior to executing the Consent Decree.

Agreed and Consented to:

Dated:  06/10/19

_____
**Cheryl Thurston, Individually**

Dated: _____

_____
**Dominick Martin, Individually**

Dated:  06/10/19

**CANADA GOOSE U.S., INC.**

By: _____
Its: _____

**SO ORDERED:**

Dated: _____

_____
**U.S.D.J.**

## CONSENT DECREE HAS BEEN READ

41.    This Consent Decree has been carefully read by each of the Parties, and its contents are known and understood by each of the Parties. This Consent Decree is signed freely by each Party executing it. The Parties each had an opportunity to consult with their counsel prior to executing the Consent Decree.

Agreed and Consented to:

Dated: _____

_____
Cheryl Thurston, Individually

Dated: 6-11-19

_____
Dominick Martin, Individually

Dated: 06/10/19

CANADA GOOSE U.S., INC.

By: _____
Its: _____

SO ORDERED:

Dated: _____

_____
U.S.D.J.

12

CONSENT DECREE